UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

BOBBY L. CRAWFORD )
)
V. ) NO. 2:10-CV-251
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation regarding the administrative denial of the plaintiff's applications for disability insurance benefits and supplemental security income under the Social Security Act. The applications were denied following administrative proceedings before an Administrative Law Judge ["ALJ"]. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 8 and 15].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision

must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 37 years of age when his applications were denied, a younger individual under the applicable regulations. He has a Ninth Grade or "limited" education. He had past relevant work as a cook, which the Ms. Cathy Sanders, the Vocational Expert ["VE"] stated was performed at both the medium and heavy exertional levels, and was skilled work, and as an electrician helper which was heavy and semi-skilled.

Plaintiff's medical history is recounted in his brief as follows:

> Plaintiff received treatment at Holston Valley Medical Center on four occasions from April 26, 2005 through March 27, 2006, due to right flank pain, abdominal pain, toothaches, and right leg pain (Tr. 344-347). On January 2, 2006, physical exam was remarkable for some hardware beneath the skin on the left lower extremity tibia. Although the notes states this was the left lower extremity, Plaintiff actually presented with complaints of right leg pain due to hardware protruding from the right lower leg (Tr. 346).
> Plaintiff received treatment at Indian Path Medical Center three times from February 16, 2006 through August 28, 2006, due to dental abscesses and right leg pain (Tr. 348-362). On August 28, 2006, right leg x-rays showed an intramedullary nail within the tibia extending from the proximal tibia to the distal metaphysic, bridging a previous mid diaphyseal tibial fracture which appeared largely healed, as well as previously healed fractures of the proximal and mid diaphyses of the fibula (Tr. 353).
> Plaintiff underwent consultative exam by Dr. Samuel Breeding on February 14, 2007. Presenting complaints included low back pain, right leg and ankle pain, hepatitis C, history of head injuries with seizures, and nervous problems. Review of systems was positive for decreased hearing, shortness of breath, abdominal pain, kidney stones, and lightheaded spells. On physical exam, Plaintiff favored his right foot while walking; he put most of his weight on his left foot; he had diffuse abdominal tenderness; he had evidence of a metal rod in his right lower leg; his right tibia bone was slightly tender to touch; his right ankle had significant decreased range of motion with minimal flexion and plantarflexion; he had some tenderness on palpation of his lower lumbar area; lumbar forward flexion was 60 degrees and extension was 10 degrees; deep tendon reflexes were

2

2+/4; and he was unable to stand on his tiptoe or heel on the right side. The diagnoses were chronic low back pain, history of right ankle and leg pain with history of fracture of the right leg and some congenital defects, history of hepatitis C, and history of four head injuries with seizures. Dr. Breeding opined Plaintiff can lift 25 pounds occasionally; can sit for six to eight hours in an eight-hour day; can stand for up to four hours in an eight-hour day; should be allowed to sit or stand as needed for comfort; may have difficulty with prolonged standing or repetitive stair climbing; and should avoid working around dangerous equipment (Tr. 363-368).

Plaintiff received treatment at Hawkins County Memorial Hospital on March 12, 2007, due to toothache and right leg pain (Tr. 369-373).

On April 3, 2007, a reviewing state agency physician opined Plaintiff can lift/carry a maximum of 20 pounds occasionally, ten pounds frequently; can stand/walk for a total of at least two hours in an eight-hour workday; can sit for a total of about six hours in an eight-hour workday; can occasionally climb, balance, stoop, kneel, crouch, and crawl; and should avoid all exposure to hazards (machinery, heights, etc.) (Tr. 374-381). On July 16, 2007, a second reviewing state agency physician offered an identical assessment (Tr. 382-389).

Dr. Tihomir Tochev treated Plaintiff from March 21, 2006 through April 16, 2007, due to right leg pain, low back pain, and muscle spasms (Tr. 390-396). On August 6, 2007, Dr. Tochev reported that Plaintiff is suffering from advanced degenerative disc disease and post traumatic lower extremities arthropathy with loss of function, for which proper medical management is limited due to lack of any health coverage. Dr. Tochev noted that, considering the severity of Plaintiff's symptoms and permanent disability they cause, he would not qualify for any private coverage or be able to obtain employment offering such coverage. Dr. Tochev opined Plaintiff is unable to maintain any gainful employment (Tr. 392).

On August 7, 2007, Dr. Tochev opined Plaintiff can lift/carry a maximum of five pounds occasionally, one to two pounds frequently; can stand/walk for a total of one hour in an eight-hour day, 30 minutes without interruption; can sit for a total of one hour in an eight-hour day, ½ hour without interruption; can never climb, stoop, kneel, balance, crouch, or crawl; is limited in his ability to push/pull; and suffers environmental restrictions in regard to exposure to heights, moving machinery, humidity, and vibration. In summary, Dr. Tochev opined Plaintiff is permanently disabled for his occupation (Tr. 395-396).

Plaintiff's academic records reflect a ninth grade education. A Health Record notes Plaintiff had a history of seizure disorder; his right foot turned in and he was wearing corrective shoes; and he needed speech therapy (Tr. 397-414).

Plaintiff continued treatment by Dr. Tochev from June 14, 2007 through October 14, 2008. The handwritten notes are partially illegible, but do reflect treatment for right leg pain and cramping, low back pain radiating into the legs, GERD, degenerative disc disease, foot pain, and osteoarthritis (Tr. 419-425, 429-430). On October 14, 2008, Dr. Tochev opined Plaintiff can lift/carry a maximum of less than five pounds occasionally, with no frequent lift/carrying recommended; can stand/walk for a total of less than one hour in an eight-hour day; can sit for a total of less than one hour in an eight-hour day; can never climb, stoop, kneel, crouch, or crawl; can occasionally balance; is limited in his ability to push/pull; and suffers environmental restrictions in regard to exposure to heights, moving machinery, chemicals, dusts, fumes, humidity, and vibration. In

3

summary, Dr. Tochev opined that, based on clinical data, Plaintiff is disabled and not able to engage in any productive employment (Tr. 426-428).

On January 12, 2009, Dr. Tochev opined Plaintiff can lift/carry a maximum of less than five pounds occasionally, with frequent lift/carrying not recommended; can stand/walk for a total of ½ hour in an eight-hour day; can sit for a total of ½ hours in an eight-hour day; can never climb, stoop, kneel, balance, crouch, or crawl; is limited in his ability to push/pull; and suffers environmental restrictions in regard to exposure to heights, moving machinery, and vibration (Tr. 432-433). Dr. Tochev further opined Plaintiff has no useful ability (poor/none) to deal with work stresses, maintain attention and concentration, behave in an emotionally stable manner, or relate predictably in social situations. Plaintiff's ability to function was noted to be seriously limited, but not precluded (fair) in the areas of follow work rules; relate to coworkers; deal with public; use judgment with the public; interact with supervisors; function independently; understand, remember, and carry out job instructions; maintain personal appearance; and demonstrate reliability. In summary, Dr. Tochev opined Plaintiff is permanently disabled for any occupation (Tr. 434-435).

Plaintiff continued treatment by Dr. Tochev from January 12, 2009 through January 19, 2010, during which time he was suffering stress, nervousness, worry, chronic low back pain with sciatica, leg pain and cramps, osteoarthritis, arthralgia, weird thoughts secondary to medications, upper respiratory infection, and anxiety (Tr. 436-438, 448-451).

On June 23, 2008, Plaintiff returned to Indian Path Medical Center with complaints of low back pain radiating into the lower extremity and ankle. The diagnosis was lumbosacral strain (Tr. 439-444).

On January 6, 2010, Plaintiff underwent consultative exam by Beth Ballard, M.A. Plaintiff reported that he quit school in the tenth grade and never obtained his GED; that he is recently homeless and stays wherever he can; that he has problems with both short and long term memory; that he stays sad all the time and feels the world should end; that he breaks down and cries; that he keeps to himself; that his sleep and appetite are poor; that sex does not interest him; that he has made passive suicide statements, would never kill himself, but just wishes he would die; and that he has no desire to do anything. Mental status exam was remarkable for psychomotor retardation and slightly impaired judgment and insight. WAIS-III testing yielded a Verbal IQ score of 71, a Performance IQ score of 74, and a Full Scale IQ score of 70. Ms. Ballard considered the results to be a valid assessment of Plaintiff's current level of functioning. The diagnoses were dysthymic disorder and borderline intellectual functioning, with a global assessment of functioning (GAF) of 50 (Tr. 452-457).

In the attached Mental Assessment of Ability to Perform Work-Related Activities, Ms. Ballard opined Plaintiff is mildly limited in his ability to understand, remember, and carry out complex instructions and to make judgments on complex work-related decisions. Ms. Ballard noted that Plaintiff is functioning within the borderline range of intelligence which, will impact his ability to understand, remember, and follow through with complex instructions; his symptoms of depression will also impact his ability to follow through with complex instructions; and he currently has difficulty concentrating and focusing (Tr. 458-461).

4

[Doc. 9, pgs. 2-6].

Plaintiff had three administrative hearings. At the last hearing, on April 20, 2010, the ALJ took the testimony of two "medical experts," who examined the plaintiff's records, listened to his testimony at that hearing, and commented upon the records.

Thomas E. Schacht, a psychologist, was the first witness. The ALJ's initial question, which Dr. Schacht did not definitively answer, was whether the plaintiff "meets or equals a listed impairment or whether he has a severe impairment...?" [Tr. 42]. Instead, at the ALJ's behest, he discussed conflicts in the plaintiff's records regarding his mental condition. He noted discrepancies between IQ testing while the plaintiff was attending public schools and his achievement test scores with the IQ results obtained by Beth Ballard, the consultative psychological examiner who examined plaintiff at the request of the ALJ, noting that the earlier scores were average as opposed to the borderline range noted by Ms. Ballard. (Tr. 42-43). He noted that Ms. Ballard found the plaintiff to be no more than "mildly impaired" in her functional assessment form. (Tr. 44). With respect to the Global Assessment of Functioning ["GAF"] of 50 reported by Ms. Ballard, Dr. Schacht explained that this low figure as contrasted with her mild impairment ratings could be explained in a number of ways, including the plaintiff's subjective complaints. (Tr. 55).

The other medical expert was Dr. Burgin E. Dossett, Jr., a specialist in internal medicine. He essentially stated that, except for his leg fracture and the hardware associated with its repair, "everything here (is) purely subjective..." He discounted Dr. Breeding's "complete physical," performed at the request of the Tennessee Disability Determination Services in 2007 stating that "Dr. Breeding does not bring out any significant or severe

5

physical findings." When asked specifically about the plaintiff's ankle fracture, Dr. Dossett stated "I don't think it would be a source of any significant discomfort." (Tr. 57-59). He did not mention or discuss the opinions or records of Dr. Tochev, the plaintiff's treating physician.

The ALJ rendered his first hearing decision on September 18, 2008. At that time, he did not have the testimony of Dr. Schacht and Dr. Dossett, nor the mental evaluation of Ms. Ballard. Naturally, while he did have the records of Dr. Tochev predating his hearing decision, he did not have those that came later. He did have Dr. Breeding's assessment, and relied upon it heavily. In that decision he found that the plaintiff had a "severe combination of impairments: neurological problems (epilepsy) and musculoskeletal problems." (Tr. 107). He found no mental impairment. In his residual functional capacity ["RFC"] finding, Judge McFadyen found that "due to the problems with his leg, ankle and feet, the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. He can stand and walk (with normal breaks) for a total of at least two hous in an 8-hour work day. Further, he can sit (with normal breaks) for a total of about 6 hours in an 8-hour workday. Finally, he can occasionally: climb; balance; stoop; kneel; crouch; and crawl." (Tr. 109). He found that "while the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms...the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the ..." RFC finding. (Tr. 110).

The ALJ gave "great weight to the opinions of the State Agency reviewing physicians..." both of whom limited the plaintiff to light work. He also gave great weight to

the opinion of Dr. Breeding. (Tr. 112). He found that the plaintiff could return to his past relevant work as a cook and was therefore not disabled.

On November 16, 2009, the Appeals Council reversed the ALJ and remanded it for further evaluation. The Council found that further development regarding the plaintiff's mental impairment was necessary. They also found that the ALJ cited the regulations relating to medium work when he found a reduced range of light work. Also, they found the ALJ erred on the record as it existed in finding that the plaintiff could perform his past relevant work as a cook, because both the plaintiff and the Dictionary of Occupational Titles described the job of cook as almost always requiring medium exertion, and because a cook would have to stand for more than two hours in an eight hour workday. It also encouraged the ALJ on remand to obtain testimony from a vocational expert "if warranted by the expanded record" to determine the "the effect of the assessed limitations on the claimant's occupational base." (Tr. 142-44).

The ALJ issued his second and final hearing decision on May 27, 2010. This time, while he found that the plaintiff had "neurological problems (epilepsy) and musculoskeletal problems...," he found that the plaintiff "does not have a severe impairment or combination of impairments." (Tr. 22). He again discusses Dr. Breeding's opinion, this time stating "the undersigned accords appropriate weight to this opinion and notes that there is a lack of objective evidence to support such limitations." (Tr. 24). Likewise, with regard to the State Agency opinions, he found that "they are not supported by the objective evidence of record." *Id.*

He once again found no mental impairment, and only mentioned Ms. Ballard's

evaluation which he had obtained upon the order of the Appeals Council in referencing that Dr. Schacht had noted that "the examiners...functional assessment indicated no area greater than mildly impaired." (Tr. 26). He discussed Dr. Dossett's remarks upon the evidence, noting especially that "Dr. Dossett opined that he did not think that the claimant's ankle would be a source of significant discomfort." (Tr. 27). Since the plaintiff had no severe impairments of any kind, the ALJ found he could return to his past relevant work as a cook which was medium to heavy, and to his work as an electrician helper which was heavy. Accordingly, he found the plaintiff was not disabled. (Tr. 28-29).

The Appeals Council denied the request for review and the second hearing decision became the final decision of the Commissioner.

Plaintiff asserts that the ALJ erred in finding at step two of the sequential evaluation process that the plaintiff did not have any severe impairment, and thus had an unlimited residual functional capacity which the ALJ opined would even allow him to return to his exertionally heavy past relevant work as an electrician's helper. Included in this argument is the assertion that the ALJ also erred in failing to give substantial deference to the opinions of Dr. Tochev. The Commissioner, recognizing the disparity between the RFC found by the ALJ in his first hearing decision of a limited range of light work and the later finding of no severe impairment, basically argues that the ALJ could change his mind and that the medical experts provided the necessary evidence to support this.

There are a number of logically and legally acceptable circumstances in which an ALJ can make a new finding based upon additional substantial evidence. For example, when a

8

plaintiff who has been awarded benefits shows substantial medical improvement as shown by a subsequent consultative examination, the ALJ may find a less restrictive RFC which would result in the plaintiff being able to engage in substantial gainful activity. In fact, a person may recover completely from a condition which rendered him or her disabled and no longer have a severe impairment.

That is not what happened in this adjudication. There was no recovery demonstrated, not even a miraculous one. Here, solid evidence from Dr. Breeding and the State Agency physicians which provided clear support for the ALJ finding the plaintiff capable of performing a limited range of light work went from being given "great weight" in the first hearing decision to being denominated as "unsupported by the objective evidence of record." Here, a finding of severe physical impairments evaporated upon nothing more than Dr. Dossett's statement that "Dr. Breeding does not bring out any significant or severe physical findings."

The report of Dr. Breeding states that he observed that the plaintiff "favors his right foot while walking," and that "he puts most of his weight on his right foot." (Tr. 366). Dr. Breeding's physical exam, with respect to the right lower leg which contained the steel plat and screws revealed that the plaintiff's "right tibia bone is slightly tender to touch. His right ankle has significant decreased range of motion with minimal flexion and plantarflexion." (Tr. 367).

Every physician who has physically examined the plaintiff, as well as the State Agency physicians who also read all of the medical records as they existed at that time opined a limited range of light work with limitations on the period the plaintiff could stand

9

and walk in a workday.

To the ALJ, and to this Court, Dr. Tochev's various opinions appear extreme and not well supported by objective findings. But the opinion of Dr. Breeding does not share these qualities, and the ALJ initially gave it great weight. Dr. Dossett, who either did not know of or ignored the problems with the right ankle noted by Dr. Breeding, is all alone in saying nothing in Breeding's report indicated any "severe or significant findings."

The Sixth Circuit, from time immemorial, has held that "the step two severity regulation...has been construed as a *de minimis* hurdle in the disability determination process...Under the prevailing *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). *citations omitted.* The *de minimis* standard exists to allow "the threshold dismissal of claims obviously lacking medical merit." *Id.* "The purpose of the second step of the sequential analysis is to enable the Commissioner to screen out 'totally groundless claims.'" *Griffeth v. Commissioner of Social Security*, 217 F. App'x 425, 428 (6th Cir. 2007), quoting *Farris v. Sec'y of HHS*, 773 F.2d 85, 89 (6th Cir. 1985).

The plaintiff has clearly and unequivocally met the *de minimis* hurdle. The Court would be of this opinion even if the first hearing decision did not exist. The abrupt about-face, while confusing, is not essential to the reality that the plaintiff has, at the very least, a severe musculoskeletal impairment arising from his right ankle injury. The decision of the Commissioner that he did not, in the opinion of this Court, was not substantially justified.

Arguably, the ALJ did not err in finding that the plaintiff did not suffer from a severe

mental impairment. The opinion of Ms. Ballard of nothing more than mild limitations, along with Dr. Schacht's plausible explanation of the GAF of 50, compromise substantial evidence in this regard, at least as of the time of the second hearing decision.

A Vocational Expert was available at the third administrative hearing when Dr. Schacht and Dr. Breeding testified. It is a mystery why the ALJ did not at least ask her what jobs the plaintiff could perform with the limitations found by Dr. Breeding.

In any event, there is a strong likelihood that a significant number of jobs exist which the plaintiff could perform even with a limited range of light work and a limited education. This is certainly not a case for a court-imposed award of benefits. It is respectfully recommended that the case be remanded to the Defendant Commissioner for further proceedings, including the utilization of a vocational expert if necessary under the appropriate regulations. Either the Commissioner or the plaintiff may submit further evidence to the ALJ for his consideration. It is further recommended that the plaintiff's Motion for Summary Judgment [Doc. 8] be GRANTED to this extent, and that the defendant Commissioner's Motion for Summary Judgment [Doc. 15] be DENIED.[1]

                                        Respectfully submitted:

                                         s/ Dennis H. Inman
                                         United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).